FILED 03 MAR '21 11:49 USDC-ORP

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **JESSE LEE REAM**, SID#8543648 | ) Civil Action No. 6:21-cv-00332-HZ |
| | ) |
| (Plaintiff) | ) |
| v. | )**CIVIL COMPLAINT FOR DAMAGES** |
| | )        **(42 USC § 1983)** |
| **REED PAULSON,** Doctor | ) |
| Oregon State Penitentiary | )        **(Jury Trial Demanded)** |
| | ) |
| (Defendant) | ) |

---

## I. JURISDICTION & VENUE

1.  This is a Civil Action authorized by 42 U.S.C., Section 1983 to redress the Deprivation, under color of State law, of rights secured by the Constitution of the United States.   The Court has jurisdiction under 28 U.S.C., Section 1331 and 1343(a)(3). Plaintiff seeks declaratory relief pursuant to 28 U.S.C., Section 2201 and 2202. Plaintiff's claims for injunctive are authorized by 28 U.S.C., Section 2283 and 2284 and Rule 65 of the Federal Rules of Civil Procedure.

2.  The Eugene District is an appropriate venue under 28 U.S.C., Section 1391(b)(2) because it is in proximity to the events giving rise to this claim occurred.

## II. PLAINTIFF

**PAGE 1 OF 12 CIVIL COMPLAINT FOR DAMAGES**

Paid-92291

1   1. Plaintiff, Jesse L. Ream, is and was at all times mentioned herein a prisoner of the

2   State of Oregon Department of Corrections.  He is currently confined in Oregon State

3   Penitentiary in Salem, Oregon.

4                          **III. DEFENDANTS**

5   1. Defendant, Dr. Reed Paulson is a Doctor, employed by the Oregon Department of

6   Corrections. Dr. Paulson is legally responsible for providing accurate and humane health

7   care treatments and recommendations to residents of above employer, including Plaintiff,

8   and individuals at the Oregon State Penitentiary.

9   2.  The above Defendant is sued individually and in their official capacity.  At all

10  times mentioned in this complaint, the Defendant acted under the color of State law.

11                          **IV. FACTS**

12  1. On or around February 9, 2018, Plaintiff returned to the Medical floor to receive a

13  blood draw.

14  2. On or around March 5, 2018, Plaintiff returned to the Medical floor to review the

15  lab results from the February 9th, 2018 blood draw.

16  3.  This review took place with only Plaintiff Ream and Defendant Dr. Paulson

17  present.

18  4.  At the conclusion of the review, Plaintiff Ream was cleared to be in overall

19  "Good health" by Defendant Dr. Paulson..

20  5.  Soon after "Good health" diagnosis, Plaintiff Ream began to experience extreme

21  chest pains that were debilitating and briefly paralytic.

**PAGE 2 OF 12 CIVIL COMPLAINT FOR DAMAGES**

1   6. Plaintiff Ream feared for his life and was unable to contact medical professionals

2  due to the limitations the Oregon State Penitentiary provides. Example: No emergency

3  button.

4   7. On May 18, 2018, Plaintiff Ream was finally able to get an X-ray appointment

5  that Defendant Dr. Paulson scheduled.

6   8. The X-rays were administered due to the many complaints and concerns that

7  Plaintiff Ream raised.

8   9. Upon completion of X-rays, Plaintiff Ream asked what other tests were next to

9  determine a diagnosis.

10   10. Medical staff informed Plaintiff that the X-ray was all he would receive and no

11  other evaluatory tests would meet him.

12   11. Plaintiff Ream was confused by this because upon information and belief, he

13  knew there are other tests that need to take place when debilitating chest pains are being

14  investigated.  Example: An E.K.G.(Electro Cardiogram), Echo-cardiogram, Ultrasound,

15  or an appointment set with the contracted Cardiologist.

16   12. On August 10, 2018, Plaintiff sent a medical communication form because he

17  had continued to experience painful and extreme chest pains at an increased rate.

18   13. On August 12, 2018, Plaintiff was told at a pre-medical appointment, dubbed

19  "sick-call".

20   14. At sick-call, Plaintiff Ream was told that the pain he was experiencing was

21  called epigastric pain, and was labeled as so.

**PAGE 3 OF 12 CIVIL COMPLAINT FOR DAMAGES**

1   15. The sick-call administrator set a date for Plaintiff to see Defendant Dr. Paulson

2   on August 20,2018, this the day Plaintiff was scheduled to receive a Kenalog injection in

3   his knee.

4   16. Upon completion of appointment with Defendant Paulson, Plaintiff was

5   reassured of being and maintaining "Good health".

6   17. Defendant Paulson additionally boasted that Plaintiff's heart is "healthy as an

7   ox" and there are no health issues to be concerned with.

8   18. Plaintiff Ream left the August 20, 2018 appointment with No diagnosis.

9   19. Plaintiff Ream continued to suffer extreme chest pains for months, but continued

10   life as normal due to the advice of the Defendant, Dr. Paulson.

11   20. On December 6, 2018, Plaintiff Ream had a massive heart attack where he

12   clinically died and electric shock paddles (Fibulator) were used to restart his heart.

13   21. During cardiovascular activity on December 6, 2018, Plaintiff Ream began to

14   feel pain on the left side of his body.

15   22. Plaintiff went unconscious in mid-stride, thus creating a full collapse. Plaintiff

16   landed on his head to a hardwood surface.

17   23. Plaintiff had no pulse or heartbeat.

18   24. Plaintiff was given CPR by Correctional Officer McNeal instantly. Officer

19   McNeal continued CPR until Emergency Medics arrived on the scene.

20   25. Emergency Medics conducted a rapid scan and confirmed the initial evaluation

21   of no heartbeat or automatic respiratory functions.

**PAGE 4 OF 12 CIVIL COMPLAINT FOR DAMAGES**

26.   EMT's immediately began the defibrilation process which mandates Electric Shock paddles.

27.   Plaintiff Ream received four electric shocks, which upon information and belief is more than the average application.

28.   Plaintiff's heart did not respond to the voltage/amps during the first three applications.

29.   On the fourth application, plaintiff Ream's heart responded which resuscitated him.

30.   Upon consciousness, Plaintiff Ream was rushed to a ambulance.

31.   Plaintiff was floating in & out of consciousness while in the ambulance.

32.   Plaintiff had to be resuscitated several times while in the ambulance on the way to the hospital.

33.   Upon arrival at the hospital, Plaintiff Ream had to undergo an emergency procedure which installed stents in his arteries due to the complete blockage.

34.   The artery in question is nicknamed "the Widow Maker" due to the fact that once this particular artery is blocked, death is very near.

35.   After the initial two stents were installed, Plaintiff Ream was notified that an additional stent would need to be placed in his artery.  This meant another surgery.

36.   These surgeries were very intrusive, intricate, and caused Plaintiff Ream intense physical and mental distress, especially once informed of the risks.

37.   The stent insertion was successful although Plaintiff Ream spent six days in the

**PAGE 5 OF 12 CIVIL COMPLAINT FOR DAMAGES**

1   ICU unit of the hospital, and an additional two days in the Penitentiary's infirmary.

2      38.  About two months after the stent insertions, Plaintiff Ream had a meeting with

3   his Cardiologist.

4      39.  The outside Cardiologist informed Plaintiff Ream that his heart had suffered

5   permanent damage due to the fatal/non-fatal heart attack.

6      40.  The Cardiologist said that he can verify this through the Ultrasound that was

7   administered to Plaintiff.

8      41.  The Cardiologist said that due to the Permanent damage, Plaintiff's Ejection

9   Pressure(E.P.) is now well below moderate heart function.

10     42.  The significance of low ejection pressure(E.P.) is that the blood that pumps from

11  Plaintiff Ream's heart is well below the normal, 40% is where Plaintiff is at now.

12  Cardiologists do not like the percentage to be below 60%, and 75% to 80%  is normal.

13     43.  Plaintiff's heart now operates at half of optimum ejection pressure (E.P.).

14     44.  The damage that occurred to Plaintiff Ream's heart ligaments that now do not

15  function, have become scar tissue, Mental Health and trust in Defendant, Dr. Paulson are

16  not reversible or repairable.

17     45.  The Cardiologist and heart professionals at the hospital admitted that the plaque

18  build-up did not happen in a short time and should have been detected with the blood

19  draw, lab work and tests administered and considering the symptoms that Plaintiff Ream

20  experienced prior to having the Massive Heart Attack.

21     46.  The Oregon State Medical Director, C. DiGiulio, told Plaintiff that the prison lab

1  tests do not typically find red flags which would indicate a heart attack.

2  47. A trial would provide the proper arguments to take place for Plaintiff to learn

3  through Medical Professionals if his heart attack and clinical death could have been

4  prevented.

5  ### V. -CAUSATION-

6  1. Due to the misdiagnosis, malpractice, and deliberate indifference of Defendant,

7  Dr. Paulson, Plaintiff Ream suffered a traumatic fatal/non-fatal heart attack which has

8  caused permanent damage to his physical and mental health. Plaintiff must now take

9  prescription medication for the foreseeable future which carry side effects of their own,

10  but outweigh the alternative. Plaintiff is no longer able to participate in many athletic

11  activities and pursue goals of athletic attainment. Plaintiff has nightmares, flashbacks and

12  states of panic which are tied to a trauma such as experienced. A Mental Health

13  Professional would easily determine this a form, if not, PTSD-Post Traumatic Stress

14  Disorder. Any laymen can clearly understand this.

15  ### VI. EXHAUSTION OF LEGAL REMEDIES

16  1. Plaintiff Ream used the prisoner grievance procedure available at the Oregon

17  State Penitentiary to try and solve the problem. On January 5,2019, Plaintiff presented

18  the facts relating to this complaint. On January 16th, 2019, Plaintiff Ream was sent a

19  response stating that the grievance had been denied. On February 8, 2019, Plaintiff

20  appealed the denial of the grievance. On April 10, 2019, Plaintiff received a response

21  stating that his appeal had been denied. On April 25, 2019, Plaintiff Ream filed his 2nd

1  grievance appeal which is required under Oregon law and the Prisoners Litigation

2  Reform Act. On June 11, 2019, Plaintiff received a response that his 2nd appeal had been

3  denied.

4      2.  The final denial certifies the exhaustion requirement under the P.L.R.A., especially

5  Section 42 U.S.C., Section 1997(e)(a) which states "[N]o action shall be brought with

6  respect to prison conditions... by a prisoner confined in any jail, prison, or other

7  correctional facility until such administrative remedies as are available are exhausted."

8                              **VII. LEGAL CLAIMS:**

9                  *Re-allege and incorporate by reference, the above Paragraphs.*

10                              **A. First Claim:**

11      1.  The failure of Defendant Dr. Paulson, to properly diagnose Plaintiff Reams' serious

12  medical need which led to a fatal/non-fatal heart attack which caused permanent physical

13  and mental damage, constitutes the Tort of Negligence under the law of Oregon.

14                              **B. Supporting Facts-**

15      1.  From early February 2018 through late August 2018, plaintiff Ream continuously

16  communicated to Defendant Paulson that Plaintiff was having chest pains and discomfort

17  which were causing major concern. Defendant continuously told Plaintiff that nothing

18  was wrong and was in "Good Health" and that his heart was "Healthy as an Ox."

19  Defendant failed to conduct proper testing or referrals which would've shown obvious

20  arterial clogging which led to a heart attack where Plaintiff was clinically dead and

21  brought back to life by CPR and defibulators. Plaintiff was dead and then not, fatal/non-

1  fatal. This was a clear misdiagnosis and malpractice.

2  **C. Second Claim.**

3  1. The failure of Defendant Paulson to properly treat Plaintiff Reams' serious medical

4  need due to deficiencies in the prison medical system causing a higher risk and harm to

5  Plaintiff shows deliberate indifference under the $8^{th}$Amendment of the United States

6  Constitution. This causing the Plaintiff physical pain & suffering, physical injury and

7  mental distress.

8  **D. Supporting Facts**

9  1. On or about May 18, 2018, upon complaints by Plaintiff of chest pains, Defendant

10  Paulson ordered an X-ray to be completed on said date. There were no other tests done or

11  referrals to outside experts to properly diagnose conditions that could possibly cause this

12  pain, such as clogged arteries. On December 6, 2018, Plaintiff suffered a severe heart

13  attack which left him dead for several minutes where he had to be brought back to life.

14  **E. Third Claim**

15  1. By failing to inquire into essential facts that are necessary to make a medical

16  decision. Defendant Paulson violated the 14th Amendment of the United States

17  Constitution and caused Plaintiff Ream pain, suffering, physical injury and emotional

18  distress.

19  **F. Supporting Facts.**

20  1. Throughout the calendar year of 2018, Plaintiff had attempted to be thoroughly

21  evaluated by the appropriate medical staff with regards to debilitating and nearly

1  paralytic chest pains. Defendant refused to conduct proper screenings and questionnaires

2  that that would have easily averted Plaintiffs' December 6, 2018 heart attack. This is not

3  only a Procedural Due Process violation, but also a substantive one. Plaintiff died due to

4  this egregious failure and had to be brought back to life. Plaintiff has permanent physical

5  injury due to the heart attack and also mental injury. Plaintiff fears the O.D.O.C. Medical

6  staff along with outside entities due to this breach of trust.

7                                    **G. Fourth Claim.**

8      1.  By denying Plaintiff Ream access to medical personnel who were qualified to

9  exercise judgment about this particular medical problem for nearly one year and

10  ultimately led to Plaintiff lying deceased on the gymnasium floor before being revived;

11  Defendant Paulson violated Plaintiff's rights under the 14th Amendment of the United

12  States Constitution. Thus causing Plaintiff pain, suffering, physical injury and emotional

13  distress.

14                                   **H. Supporting Facts.**

15     1. On or about May 18, 2018, upon complaints by Plaintiff Ream of extreme chest

16  pains, Defendant Paulson refused to refer Plaintiff to an outside Cardiologist to properly

17  diagnose the status of Plaintiff's arteries and the clogging thereof. Defendant continued to

18  deny Plaintiff access to Cardiologist into August 2018, and told Plaintiff he was in "Good

19  Health" and that his heart was "Healthy as an Ox', which a Cardiologist would have

20  obviously contradicted. These denials led to a fatal heart attack in which Plaintiff had to

21  be brought back to life and has left him with permanent injury, both physical and mental.

**PAGE 10 OF 12 CIVIL COMPLAINT FOR DAMAGES**

1  **I. Fifth Claim.**

2  1.  By Defendant Paulson misdiagnosing Plaintiff's heart health when there was a

3  severe clogging of the arteries which led to a deadly heart attack, Defendant violated

4  Plaintiff's rights under the 14th Amendment of the United States. This causing Plaintiff

5  permanent damage, emotional distress, and mental distress.

6  **J. Supporting Facts.**

7  1.  On December 6, 2018 Plaintiff died due to a heart attack that would have been

8  prevented had the proper diagnosis been given. Plaintiff was given life saving protocols

9  that saved his life by prison staff and Emergency Medical Technicians. If not for these

10  brave First Responders, Plaintiff would currently be deceased. Plaintiff now has

11  permanent heart damage, permanent mental damage and a broken trust in the medical

12  profession due to Defendant Paulson's deliberate indifference and malpractice.

13  2.  The Plaintiff has no plain, adequate or complete remedy at law to redress the

14  wrongs described herein. Plaintiff has been and will continue to be irreparably injured by

15  the conduct of the Defendant unless this court grants the declaratory and injunction relief

16  which Plaintiff seeks.

17  **VI. PRAYER FOR RELIEF**

18  1. Wherefor, Plaintiff Ream respectfully prays that this court enter judgment granting

19  Plaintiff:

20  (a) A declaration that the acts and omissions described herein violated Plaintiff

21  Ream's rights under the Constitution of the United States and State laws.

**PAGE 11 OF 12 CIVIL COMPLAINT FOR DAMAGES**

1    (b) A preliminary and permanent injunction ordering Defendant Dr. Paulson to

2 refer all chest pain patients to an outside professional.

3    (c) A preliminary and permanent injunction ordering Defendant Paulson to undergo

4 re-training in the medical field of Pre-heart attack evaluation and similar cardiac

5 conditions.

6    (d) Compensatory damages in the amount of $452,755.00 against each defendant,

7 jointly and severally.

8    (e) Punitive damages in the amount of $545,000.00 against each Defendant, jointly

9 and severally.

10    (f) A jury trial on all issues triable by a jury.

11    (g) Plaintiff's costs and fees in this suit.

12    (h) Any additional relief this court deems just, proper and equitable.

13    Date: February 4, 2021

14                                    Respectfully Submitted,
15
16                                    JESSE REAM, Plaintiff
17                                    SID No. 8543648
18                                    2605 State St.
19                                    Salem, Oregon 97310

20                          **VERIFICATION**

21    I have read the foregoing complaint and hereby verify that the matters alleged therein are

22 true & correct, except as to matters alleged in information and belief, as to those, I believe them

23 to be true. I certify under penalty of perjury that the foregoing is true & correct.

24    **Executed at Salem, Oregon on February 4, 2020**

25
26                                 **JESSE LEE REAM, #8543648**

**PAGE 12 OF 12 CIVIL COMPLAINT FOR DAMAGES**